**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**Mark Crawford, et al.,**

     *Plaintiffs,*

vs.

                              **Case No.: 3:15-CV-00250
Judge Thomas M. Rose**

**United States Department of the Treasury, et al.,**

     *Defendants.*

---

**ENTRY AND ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE AN
AMENDED VERIFIED COMPLAINT (DOC. 32); GRANTING DEFENDANTS'
MOTION TO DISMISS (DOC. 26) PLAINTIFFS' COMPLAINT (DOC. 1); AND
TERMINATING CASE.**

---

Plaintiffs[1] filed suit against the United States Department of the Treasury ("Treasury

Department"), United States Internal Revenue Service ("IRS"), and United States Financial

Crimes Enforcement Network ("FinCEN"), referred to, collectively, as "Defendants", seeking

declaratory and injunctive relief on all claims. (Doc. 1, at PageID# 48–50.) Plaintiffs' Verified

Complaint (doc. 1) and proposed Amended Verified Complaint (doc. 32-1) challenge the Foreign

Account Tax Compliance Act ("FATCA"), the intergovernmental agreements ("IGAs")

negotiated by the Treasury Department to supplant FATCA in the signatory countries, and the

Report of Foreign Bank and Financial Accounts ("FBAR") administered by FinCEN.  FATCA

---

[1] Plaintiffs include Mark Crawford ("Plaintiff Crawford"), Senator Rand Paul ("Plaintiff Paul"), in his official capacity as a member of the United States Senate, Roger Johnson ("Plaintiff Roger Johnson"), Katerina Johnson ("Plaintiff Katerina Johnson"), Daniel Kuettel ("Plaintiff Daniel Kuettel"), Lois Kuettel ("Plaintiff Lois Kuettel"), a minor child, by and through her next friend, Daniel Kuettel, Stephen J. Kish ("Plaintiff Kish"), Donna-Lane Nelson ("Plaintiff Nelson"), Richard Adams ("Plaintiff Adams"), and L. Marc Zell ("Plaintiff Zell"), referred to, collectively, as "Plaintiffs."

mandates that foreign financial institutions ("FFIs") report the tax return information of their U.S. citizen account holders directly to the IRS using the FATCA Report (Form 8966). 26 U.S.C. § 1471(b)(1)(C); 26 C.F.R. §§ 1.1471-4(d)(3)(v), -4(d)(3)(vi).

Previously, Plaintiffs moved for a preliminary injunction on all claims (doc. 8, at PageID# 135–38) and attached a Memorandum in Support of their Motion for Preliminary Injunction. (Doc. 8-1, at PageID# 139–74.) After full briefing, the Court denied Plaintiffs' Motion for Preliminary Injunction. (Doc. 30.) Now before the Court is Defendants' Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1), (6). (Docs. 26, 27.) Plaintiffs filed a Memorandum in Opposition to the Motion to Dismiss. (Doc. 37.) Defendants filed a Reply Memorandum in Support of their Motion to Dismiss. (Doc. 38.)

In addition, Plaintiffs filed a Motion for Leave to File an Amended Verified Complaint, (doc. 32), and attached a proposed Amended Verified Complaint, (doc. 32-1), to their motion. Defendants filed a Memorandum in Opposition to Plaintiffs' Motion for Leave, (doc. 34), arguing that amendment is futile because the proposed Amended Verified Complaint does not cure the deficiencies stated in Defendants' Motion to Dismiss, (docs. 26, 27), and the Court's Entry and Order Denying Plaintiff's Motion for Preliminary Injunction. (Doc. 30.) Plaintiffs filed a Reply Memorandum in support of their Motion for Leave. (Doc. 35.)

There are eight proposed claims before the Court. (Doc. 32-1, at 154–209.) The first claim challenges the validity of the Canadian, Czech, Israeli, French, Danish, and Swiss IGAs[2]

---

[2] Agreement Between the Government of the United States of America and the Government of Canada to Improve International Tax Compliance through Enhanced Exchange of Information under the Convention Between the United States of America and Canada with Respect to Taxes on Income and on Capital, Can.-U.S., Feb. 5, 2014, U.S. Dep't of Treasury, available at https://www.treasury.gov/resource-center/tax-policy/treaties/Documents/FATCA-Agreement-Canada-2-5-2014.pdf [hereinafter Canadian IGA]; Agreement between the United States of America and the Czech Republic to Improve International Tax Compliance and with Respect to the United States Information and Reporting Provisions Commonly Known as the Foreign Account Tax Compliance Act, Czech-U.S., Aug. 4, 2014, U.S. Dep't of Treasury, available at https://www.treasury.gov/resource-center/tax-policy/treaties/Documents/FATCA-Agreement-Czech-Republic-8-4-2-14.pdf [hereinafter Czech IGA];

used by the Treasury Department. (*Id.*, at 154–65.) The second claim addresses the information reporting provisions FATCA and the IGAs impose not on Plaintiffs, but on FFIs. (*Id.*, at 166–71.) The third claim aims at the heightened reporting requirements for foreign bank accounts under FATCA, the IGAs, and the FBAR. (*Id.*, at 172–78.) The fourth claim challenges the 30% tax imposed by FATCA on payments to FFIs from U.S. sources when these foreign institutions choose not to report to the IRS about the bank accounts of their U.S. customers (the "FFI Penalty"). (*Id.*, at 179–88.) Similarly, the fifth claim challenges the 30% tax imposed by FATCA on account holders who exercise their rights under the statute not to identify themselves as United States citizens to their banks and to refuse to waive privacy protections afforded their accounts by foreign law (the "Passthrough Penalty"). (*Id.*, at 189–93.) The sixth claim challenges the penalty imposed under the Bank Secrecy Act for "willful" failures to file an FBAR for foreign accounts, which can be as much as the greater of $100,000 or 50% of the value of the unreported account (the "Willfulness Penalty"). (*Id.*, at 194–98.) The seventh and eighth claims challenge the information reporting requirements of FATCA and the IGAs as unconstitutional under the Fourth Amendment. (*Id.*, at 199–209.)

---

Agreement between the Government of the United States of America and the Government of the State of Israel to Improve International Tax Compliance and to Implement FATCA, Isr.-U.S., June 30, 2014, U.S. Dep't of Treasury, available at https://www.treasury.gov/resource-center/tax-policy/treaties/Documents/FATCA-Agreement-Israel-6-30-2014.pdf [hereinafter Israeli IGA]; Agreement Between the Government of the United States of America and the Government of the French Republic to Improve International Tax Compliance and to Implement FATCA, Fr.-U.S., Nov. 14, 2013, available at https://www.treasury.gov/resource-center/tax-policy/treaties/Documents/BilateralAgreementUSFranceImplementFATCA.pdf [hereinafter French IGA]; Agreement between the Government of the United States of America and the Government of the Kingdom of Denmark to Improve International Tax Compliance and to Implement FATCA, Den.-U.S., Nov. 19, 2012, available at https://www.treasury.gov/resource-center/tax-policy/treaties/Documents/FATCA-Agreement-Denmark-11-19-2012.pdf [hereinafter Danish IGA]; Agreement between the United States of America and Switzerland for Cooperation to Facilitate the Implementation of FATCA, Switz.-U.S., Feb. 14, 2013, available at https://www.treasury.gov/resource-center/tax-policy/treaties/Documents/FATCA-Agreement-Switzerland-2-14-2013.pdf [hereinafter Swiss IGA].

The Motion to Dismiss and Motion for Leave to Amend are now fully briefed and ripe for decision. A relevant factual background will first be set forth, followed by the applicable legal standard and analysis of the motions.

## I.    BACKGROUND

### A. FATCA Statute and Regulations

Congress passed FATCA in 2010 to improve compliance with tax laws by U.S. taxpayers holding foreign accounts. FATCA accomplishes this through two forms of reporting: (1) by FFIs about financial accounts held by U.S. taxpayers or foreign entities in which U.S. taxpayers hold a substantial ownership interest, 26 U.S.C. § 1471; and, (2) by U.S. taxpayers about their interests in certain foreign financial accounts and offshore assets. 26 U.S.C. § 6038D.

#### 1. FATCA

President Obama signed FATCA into law on March 18, 2010. Senator Carl Levin, a co-sponsor of the FATCA legislation, declared, "offshore tax abuses [targeted by FATCA] cost the federal treasury an estimated $100 billion in lost tax revenues annually." 156 Cong. Rec. 5 S1745-01 (2010). FATCA became law as the IRS began its Offshore Voluntary Disclosure Program ("OVDP"), which since 2009 has allowed U.S. taxpayers with undisclosed overseas assets to disclose them and pay reduced penalties. By 2014, the OVDP collected $6.5 billion through voluntary disclosures from 45,000 participants. *IRS Makes Changes to Offshore Programs; Revisions Ease Burden and Help More Taxpayers Come into Compliance*, IRS (June 18, 2014), https://www.irs.gov/uac/Newsroom/IRS-Makes-Changes-to-Offshore-Programs%3B-Revisions-Ease-Burden-and-Help-More-Taxpayers-Come-into-Compliance. The success of the voluntary program has likely been enhanced by the existence of FATCA.

#### 2. **Foreign Financial Institution Reporting Under FATCA**

Foreign Financial Institution reporting encourages FFIs to disclose information on U.S. taxpayer accounts. If the FFI does not, then a 30% withholding tax may apply to U.S.-sourced payments to the non-reporting FFI. A 30% withholding tax may also apply to FFI account holders who refuse to identify themselves as U.S. taxpayers.

> In the case of any withholdable payment to a foreign financial institution which does not meet the requirements of subsection (b) [specifying reporting criteria], the withholding agent with respect to such payment shall deduct and withhold from such payment a tax equal to 30 percent of the amount of such payment.

26 U.S.C. § 1471(a).

Section 1471(b)(1) then provides that, "[t]he requirements of this subsection are met with respect to any foreign financial institution if an agreement is in effect between such institution and the Secretary [of the Treasury] under which such institution agrees" to make certain information disclosures and "to deduct and withhold a tax equal to 30 percent of . . . [a]ny [pass-through] payment which is made by such institution to a recalcitrant account holder or another foreign financial institution which does not meet the requirements of this subsection[.]" § 1471(b)(1)(D)(i); *see also* § 1471(d)(7) (defining "pass[-through] payment"). A "recalcitrant account holder" is one who "[f]ails to comply with reasonable requests for information" that is either information an FFI needs to determine if the account is a U.S. account, § 1471(b)(1)(A), or basic information like the account holder's name, address, and taxpayer identification number. § 1471(c)(1)(A). Section 1471(c)(1) specifies the "information required to be reported on U.S. accounts," including "account balance or value." § 1471(c)(1)(C). In their Amended Verified Complaint, Plaintiffs seek a preliminary injunction against enforcement of § 1471(a), (b)(1)(D), (c)(1), and (c)(1)(C). (Doc. 32-1, Prayer for Relief at W.)

Under § 1471(b)(2), "Financial Institutions Deemed to Meet Requirements in Certain Cases," an FFI "may be treated by the Secretary as meeting the requirements of this subsection if . . . such institution is a member of a class of institutions with respect to which the Secretary has determined that the application of this section is not necessary to carry out the purposes of this section." That means that an FFI that is treated this way is not subject to the reporting criteria in § 1471(b)(1). The Secretary can statutorily exempt FFIs from "attempt[ing] to obtain a valid and effective waiver" of foreign nondisclosure laws from each account holder and can exempt FFIs from closing such account "if a waiver . . . is not obtained from each such holder within a reasonable period of time." § 1471(b)(1)(F).[3] The Secretary's exemption of an FFI under § 1471(b)(2) also means that the FFI no longer has to make the report described in § 1471(c)(1) because that report is based on "[t]he agreement described in subsection (b)" that an FFI the Secretary has exempted does not need to have in place to avoid withholding. Furthermore, the FATCA statute provides, "[t]he Secretary shall prescribe such regulations or other guidance as may be necessary or appropriate to carry out the purposes of, and prevent the avoidance of, this chapter," i.e., §§ 1471-74. 26 U.S.C. § 1474(f).

Plaintiffs also seek to enjoin enforcement of 26 C.F.R. § 1.1471-2T(a)(1). The "[g]eneral rule of withholding" under § 1471(a) is largely reiterated by 26 C.F.R. § 1.1471-2T(a)(1), which Plaintiffs also target. (Doc. 32-1, Prayer for Relief at Z.) Plaintiffs seek to enjoin enforcement of 26 C.F.R. §§ 1.1471-4(a)(1), 1.1471-4(d), and 1.1471-4(d)(3)(ii), which repeat the content of § 1471(b) and (c). (*Id.*, Prayer for Relief at AA.) In addition, Plaintiffs seek an injunction against 26 C.F.R. § 1.1471-4T(b)(1), which addresses the 30% withholding tax for recalcitrant account holders established by the statute. (*Id.*, Prayer for Relief at BB.) Plaintiffs also seek to enjoin the

---

[3] If the country enters into an IGA this provision becomes irrelevant because consent is no longer a legal impediment under foreign law.

IRS's use of Form 8966, "FATCA Report", the form on which FFIs make disclosures under § 1471(c). *See* 26 C.F.R. § 1.1471-4(d)(3)(v); (doc. 32-1, Prayer for Relief at DD.) In Plaintiffs' view, these FATCA regulations "primarily elaborate on the [] requirements of the statutory provisions and clarify the statutory requirements." (Doc. 32-1, at 37.)

### 3. Individual Reporting Under FATCA

There is a companion individual reporting requirement to § 1471's FFI reporting requirement located at 26 U.S.C. § 6038D. Under § 6038D, individuals holding more than $50,000 of aggregate value in "specified foreign financial assets", § 6038D(b), must file a report with their annual tax returns, § 6038D(a), that includes, for each asset "[t]he maximum value of the asset during the taxable year." § 6038D(c)(4). Plaintiffs seek to enjoin this asset-value reporting requirement. (Doc. 32-1, Prayer for Relief at X.) Section 6038D(h) also provides that, "[t]he Secretary shall prescribe such regulations or other guidance as may be necessary or appropriate to carry out the purposes of this section . . . ." Plaintiffs seek to enjoin enforcement of the regulation that states this same reporting requirement. 26 C.F.R. § 1.6038D-4(a)(5); (*see* doc. 32-1, Prayer for Relief at CC.) Plaintiffs also target two other regulatory reporting requirements: disclosing whether a depository or custodial account was opened or closed during the taxable year, 26 C.F.R. § 1.6038D-4(a)(6); and "[t]he amount of any income, gain, loss, deduction, or credit recognized for the taxable year with respect to the reported specified foreign financial asset", 26 C.F.R. § 1.6038D-4(a)(8). (Doc. 32-1, Prayer for Relief at CC.)

### B. The Canadian, Czech, Israeli, French, Danish, and Swiss Intergovernmental Agreements

Once FATCA became law, the Government began requiring coordination with FFIs and foreign governments. To facilitate FATCA implementation, the United States has concluded

over seventy IGAs with foreign governments addressing the exchange of tax information. Plaintiffs seek to enjoin IGAs with Canada, the Czech Republic, Israel, France, Denmark, and Switzerland in their entirety. (Doc 32-1, Prayer for Relief at B1[4], E, I, M, Q, U.) Alternatively, they seek to enjoin parts of those IGAs. (*Id.*, Prayer for Relief at B2–D, F–H, J–L, N–P, R–T, V.)

The Canadian, Czech, French, Danish, and Israeli IGAs are similar because they are all "Model 1" IGAs, whereas the Swiss IGA is a "Model 2" IGA. The key distinction is that under Model 1 IGAs, foreign governments agree to collect their FFIs' U.S. account information and to send it to the IRS, whereas under Model 2 IGAs, foreign governments agree to modify their laws to the extent necessary to enable their FFIs to report their U.S. account information directly to the IRS. All six IGAs, in their preambulatory clauses, recognize the partner governments' mutual "desire to conclude an agreement to improve international tax compliance"[5] or, in the case of Switzerland, a "desire to conclude an agreement to improve their cooperation in combating international tax evasion."[6]

All six IGAs mention the Tax Information Exchange Agreements ("TIEAs") that the United States has with these six countries as part of preexisting treaties. *See supra* notes 5–6. All six IGAs similarly note the need for "an intergovernmental approach to FATCA

---

[4] Plaintiffs' proposed Amended Verified Complaint contains two "B" sections in the Prayer for Relief; therefore, the first "B" section will be referred to as "B1" and the second "B" section will be referred to as "B2".

[5] Canadian IGA pmbl.; Czech IGA pmbl.; Israel IGA pmbl.; French IGA pmbl.; Danish IGA pmbl.

[6] Swiss IGA pmbl.; *see also* Convention between the United States and Canada with Respect to Taxes on Income and Capital, Can.-U.S., art. XXVII, Sept. 26, 1980 ("Canadian Convention"); Convention between the United States of America and the Czech Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital, Czech-U.S., art. 29, Sept. 16, 1993 ("Czech Convention"); Convention between the Government of the United States of America and the Government of the State of Israel with Respect to Taxes on Income, Isr.-U.S., art. 29, Nov. 20, 1975 ("Israeli Convention"); Convention between the Government of the United States of America and the Government of the French Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital, Together with Two Related Exchanges of Notes, Fr.-U.S., art. 26(2), Aug. 31, 1994 ("French Convention"); Convention between the United States of America and the Government of the Kingdom of Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, Den.-U.S., art. 26, Aug. 19, 1999 ("Danish Convention"); Convention between the United States and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income, Switz.-U.S., art. 26, Oct. 2, 1996 ("Swiss Convention").

implementation", or, in the Swiss case, "intergovernmental cooperation to facilitate FATCA implementation". *Id.*

The five Model 1 IGAs—Canadian, Czech, French, Danish, and Israeli—define "Obligations to Obtain and Exchange Information with Respect to Reportable Accounts" in Article 2. Canadian IGA art. 2; Czech IGA art. 2; French IGA art. 2; Danish IGA art. 2; Israel IGA art. 2. In addition to seeking to enjoin Article 2 in full, (doc. 32-1, Prayer for Relief at B2, F, J, N, R), Plaintiffs attack the agreement that IGA partners, with respect to each "U.S. Reportable Account" of its FFIs, will report, "the account balance or value . . . as of the end of the relevant calendar year or other appropriate reporting period . . . ." Canadian IGA art. 2, § 2(a)(4); Czech IGA art. 2, § 2(a)(4); French IGA art. 2, § 2(a)(4); Danish IGA art. 2, § 2(a)(4); Israeli IGA art. 2, § 2(a)(4); (*see* doc. 32-1, Prayer for Relief at C, G, K, O, S.) If Model 1 partner countries comply with Article 2 as well as the "Time and Manner of Exchange of Information" agreed to in Article 3 and other rules, then their reporting FFIs "shall be treated as complying with, and not subject to withholding under, section 1471", nor will they be required to withhold "with respect to an account held by a recalcitrant account holder" under § 1471. Canadian IGA art. 4, §§ 1, 2; Czech IGA art. 4 §§ 1, 2; French IGA art. 4 §§ 1, 2; Danish IGA art. 4 §§ 1, 2; Israeli IGA art. 4, §§ 1, 2. This is consistent with the Treasury Secretary's power to deem FFIs to be in compliance with § 1471 if statutory purposes are met. 26 U.S.C. § 1471(b)(2)(B).

The Israeli IGA is not yet in force. *See* Israeli IGA art. 10, § 1. However, the Government asserts that the Treasury Secretary has exercised his discretion not to impose § 1471 withholding against Israeli FFIs or recalcitrant account holders.

The Swiss IGA is different in that under its Article 3—which Plaintiffs seek to enjoin (doc. 32-1, Prayer for Relief at V)—the Swiss government agrees to "direct all Reporting Swiss Financial Institutions" to report certain information directly to the IRS. Swiss IGA art. 3, § 1. Under Article 5—which Plaintiffs also seek to enjoin (doc. 32-1, Prayer for Relief at V)—the U.S. government "may make group requests . . . based on the aggregate information reported to the IRS pursuant to" Article 3. Swiss IGA art. 5, § 1. "Such requests shall be made pursuant to Article 26 of the [Swiss] Convention, as amended by the Protocol," and, "such requests shall not be made prior to the entry into force of the Protocol[.]" Swiss IGA art. 5, § 2. The "Protocol" being "the Protocol Amending the [Swiss] Convention that was signed at Washington on September 23, 2009." Swiss IGA pmbl. That Protocol has not yet been approved by the Senate, and because of that, Article 5 of the Swiss IGA cannot yet be implemented.

### C. Report of Foreign Bank and Financial Accounts

The third body of law at issue in this case pertains to the FBAR requirements. U.S. persons who hold a financial account in a foreign country that exceeds $10,000 in aggregate value must file a FBAR with the Treasury Department reporting the account. *See* 31 U.S.C. § 5314; 31 C.F.R. §§ 1010.306(c), .350. The current FBAR form is FinCEN Form 114. The form has been due by June 30 of each year regarding accounts held during the previous calendar year. 31 C.F.R. § 1010.306(c). Beginning with the 2016 tax year, the due date of the form will be April 15. Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Pub. L. No. 114-41, § 2006(b)(11), 129 Stat. 443. A person who fails to file a required FBAR may be assessed a civil monetary penalty. 31 U.S.C. § 5321(a)(5)(A). The amount of the penalty is capped at $10,000 unless the failure was willful. *See* § 5321(a)(5)(B)(i), (C). A willful failure to file increases the maximum penalty to $100,000 or half the value in the account at the time of

the violation, whichever is greater. § 5321(a)(5)(C). In either case, whether to impose the penalty and the amount of the penalty are committed to the Secretary's discretion. *See* § 5321(a)(5)(A) ("The Secretary of the Treasury may impose a civil money penalty[.]"); § 5321(a)(5)(B) ("[T]he amount of any civil penalty . . . shall not exceed" the statutory ceiling). Plaintiffs seek to enjoin enforcement of the willful FBAR penalty under § 5321(a)(5). (Doc. 32-1, Prayer for Relief at Y.) They also ask for an injunction against "the FBAR account-balance reporting requirement" of FinCen Form 114. (*Id.*, Prayer for Relief at EE.)

## II. MOTIONS TO AMEND AND DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1), 15(A)(2)

### A. Motion to Dismiss pursuant to Fed. Civ. P. 12(b)(1) for Lack of Standing

#### 1. Standard of Review

Defendants challenge Plaintiffs' standing, which relates to the Court's jurisdiction; therefore, the Court must consider the issue first. *Sault Ste. Marie v. United States*, 9 F. App'x. 457, 460 (6th Cir. 2001) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998)). Federal courts may only decide actual cases or controversies. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). "One element of the case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The standing requirement protects the "time-honored concern about keeping the Judiciary's power within its proper constitutional sphere." *Id.* at 820. "[S]tanding inquir[ies are] especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnest Int'l USA*, 133 S. Ct. 1138, 1146 (2013).

Standing contains three elements:

> First, plaintiffs must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and internal quotation omitted).

As for the first consideration, a "threatened injury must be certainly impending to constitute injury in fact," and "'[a]llegations of possible future injury' are not sufficient." *Clapper*, 133 S. Ct at 1147 (quoting *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990)) (emphasis in original). Similarly, "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74; *see also id.* at 577 (rejecting attempt "to convert the undifferentiated public interest in executive officers' compliance with the law into an 'individual right' vindicable in the courts"). In addition, plaintiffs generally cannot establish standing indirectly when their injury is the result of "the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976); *see also Lujan*, 504 U.S. at 560-61 (same); *Shearson v. Holder*, 725 F.3d 588, 592 (6th Cir. 2013) (same); *Ammex, Inc. v. United States*, 367 F.3d 530, 533 (6th Cir. 2004) (finding no standing to challenge excise tax assessed against third party, since "alleged injury . . . in the form of increased fuel costs was not occasioned by the Government").

12

As to the second consideration, "a plaintiff must 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Coyne*, 183 F.3d at 494 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *see also United States v. Ovalle*, 136 F.3d 1092, 1100-01 (6th Cir. 1998); *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). The rare exception to this requirement arises where a plaintiff can "show that (1) it has suffered an injury in fact; (2) it has a close relationship to the third party; and (3) there is some hindrance to the third party's ability to protect his or her own interests." *Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 404 (6th Cir. 1999); *see also Connection Distrib. Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998).

"A plaintiff bears the burden of demonstrating standing and must plead its components with specificity." *Coyne*, 183 F.3d at 494; *see also Lujan*, 504 U.S. at 561. A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). The Supreme Court has "always insisted on strict compliance with this jurisdictional standing requirement." *Raines*, 521 U.S. at 819. Moreover, "suits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations are, even when premised on allegations of several instances of violations of law, rarely if ever appropriate for federal-court adjudication." *Lujan*, 504 U.S. at 568 (quotation omitted).

### 2.  United States Senator Rand Paul

Plaintiff Paul seeks to base legal standing for Counts 1 and 2 on his role as a U.S. Senator, charged with the institutional task of advice and consent under the U.S. Constitution. He contends that the IGAs exceed the proper scope of Executive Branch power and should have been submitted for Senate approval. (Doc. 32-1, at 32–33.) In its Entry and Order Denying

Plaintiffs' Motion for Preliminary Injunction, the Court found this insufficient to meet the requirements of standing for three reasons, stating: (1) Plaintiff Paul has alleged no injury to himself as an individual, (2) the institutional injury he alleges is wholly abstract and widely dispersed, and (3) his attempt to litigate this dispute at this time and in this form is contrary to historical experience. (Doc. 30, at 14.)

As Defendants argue, Plaintiffs have failed to cure the deficiencies behind the Court's denial for preliminary injunction. The lone amendment in Plaintiffs' proposed amended complaint, in regards to Plaintiff Paul, states:

> Senator Paul now suffers, and will continue to suffer, the concrete and particularized injury of not being able to vote against the FATCA IGAs, which injury was caused by the unconstitutional and illegal action creating the IGAs, and which injury will be redressed by the IGAs being held beyond constitutional and statutory authority.

(Doc. 32-1, at 34.) This proposed amendment formulaically recites the elements for standing, while reasserting the same basis for standing that the Court previously found insufficient. As Plaintiff Paul's claim of standing is based on a loss of political power, not a loss of any private right, the asserted injury is not "concrete" for purposes of Article III standing. (*See* doc. 30, at 13 (citing *Raines*, 512 U.S. at 821.) Moreover, the additional deficiencies previously identified by the Court are likewise, not cured, by the proposed amendment. Senator Paul has neither been authorized to sue on behalf of the Senate nor can he base his standing on a more generalized interest in "vindication of the rule of law." (Doc. 30, at 14 (citation omitted).) A legislator does not hold any legally protected interest in proper application of the law that is distinct from the interest held by every member of the public. Therefore, Plaintiff Paul does not allege a particularized, legally cognizable injury by his claim that the Executive Branch is not adhering to the law. *See Campbell v. Clinton*, 203 F.3d 19, 22 (D.C. Cir. 2000) (stating Congressional

14

plaintiffs do not "have standing anytime a President allegedly acts in excess of statutory authority").

Plaintiff Paul has an adequate remedy to challenge the reporting requirements and penalties that he opposes by working to repeal these laws through the legislative process. *Raines*, 521 U.S. at 821.

### 3. Individual Plaintiffs

The Court previously found that all Plaintiffs lacked standing to sue, except Plaintiff Daniel Kuettel because Defendants conceded he had standing with respect to Counts three and six regarding FBAR requirements. (Doc. 30 at 14–23.) Defendants, in their Motion to Dismiss, assert that they did not make such concession; therefore, the Court will analyze standing as it relates to all individual plaintiffs on all counts. (Doc. 27, at 4 n.1.) This analysis will include three new plaintiffs—Katerina Johnson, Lois Kuettel, and Richard Adams—named in Defendants' proposed Amended Verified Complaint. (Doc. 32-1, at 1.)

The basis for the Court's previous finding for lack of standing was due to no individual plaintiffs alleging they suffered or was about to suffer injury under the FATCA withholding tax. (Doc. 30, at 14.) Neither were any plaintiffs an FFI to which the tax under § 1471 applies nor were they assessed the tax. (*Id.*) No plaintiffs had even been informed that the IRS intends to assess the recalcitrant account holder withholding tax imposed by § 1471(b). (*Id.* at 14–15.) Moreover, all Plaintiffs, but Crawford, live in jurisdictions where FFIs are not currently subject to the § 1471(b) withholding tax.

### a. Mark Crawford

Plaintiff Crawford seeks to invalidate FATCA and the FBAR requirements on three bases: (1) his brokerage firm cannot accept U.S. citizens—including Crawford himself—as

clients, due to a relationship with a bank that has a policy against taking on American clients, (*see* doc. 32-1, at 11–12); (2) he does not want the "financial details of his accounts" disclosed to the U.S. government, (*see id.*, at 12); and (3) he fears "unconstitutionally excessive fines imposed by 31 U.S.C. § 5321 if he willfully fails to file an FBAR." (*See id.*, at 12–13).

Previously, the Court found Plaintiff Crawford lacked standing because standing cannot be established when third parties are the causes of the alleged injuries. (Doc. 30, at 15.) The alleged injury involved his bank's policy against U.S. citizens as clients, and subsequent denial of his application for a brokerage account as possibly affecting Plaintiff Crawford financially. (Doc. 32-1, at 11–12.) The Court found any such harm as not fairly traceable to an action by Defendants, which are not responsible for the decisions of a third party. (Doc. 30, at 15.) In an attempt to cure this deficiency, Plaintiff Crawford identifies a specific denial of his application by Saxo Bank in Copenhagen, Denmark, which was allegedly because he is a U.S. citizen. (Doc. 32-1, at 12.) However, this amendment fails to establish the required connection between the Defendants and the harm. Instead, the amendment provides further explanation of the harm that the Court previously found to be not fairly traceable to an action by Defendants.

Plaintiffs argue that *Warth v. Seldon* recognized that indirect harm may be sufficient to establish standing. (Doc. 35, at 9 (citing 422 U.S. 490, 504–05).) The Supreme Court in *Warth*, stated:

> The fact that the harm to petitioners may have resulted indirectly does not in itself preclude standing. When a governmental prohibition or restriction imposed on one party causes specific harm to a third party, harm that a constitutional provision or statute was intended to prevent, the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights. But it may make it substantially more difficult to meet the minimum requirement of Art. III: to establish that, in fact, the asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm.

16

*Id.* (citation omitted). While an injury may be indirect, in certain circumstances, the injury must still be "fairly traceable to the challenged action of the defendant[,]" *Lujan*, 504 U.S. at 560–61, and "not dependent on speculation about the possible actions of third parties not before the court." *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264 (1977). Although the amendment does identify that Plaintiff Crawford was unsuccessful in his attempt to obtain a brokerage account, the causation of such harm is dependent on speculation of possible third party action by the Court.

In *Village of Arlington Heights*, an African-American man alleged that he sought and would qualify for a prospective housing complex, and that he would probably move there, as it was closer to his job. 429 U.S. at 264. However, the man alleged that he was unable to move there because he was an African American. *Id.* The Supreme Court found it compelling that if the Court were to grant the relief sought, there was at least a "substantial probability" the man would be afforded the housing opportunity. *Id.* (citation omitted). Here, if the Court were to grant the relief sought, the facts as alleged do not suggest that there is a "substantial probability" that Plaintiff Crawford will be successful in his banking endeavors. Rather, it requires the Court to speculate as to the actions of Saxo Bank. The question of whether or not Saxo Bank would grant Plaintiff Crawford's application for a brokerage account cannot be determined with "substantial probability" without speculation as to the general practices and policies of Saxo Bank, if Plaintiff Crawford meets the criteria of the Saxo Bank's general practices and policies for a brokerage account, and any other aspects of Saxo Bank's application process that fall squarely within their discretion.

In addition, as the Court previously found, Plaintiff Crawford's discomfort with the information reporting requirements of FATCA does not establish the concrete, particularized

17

harm that confers standing. (Doc. 30, at 15.) Plaintiff Crawford states, "[he] now suffers, and will continue to suffer, concrete and particularized injuries to legally protected interest, which interests are caused by the challenged government actions and will be redressed by the requested relief." (Doc. 32-1, at 13.) However, merely reciting the elements of a cause of action is not sufficient to convey standing. Furthermore, regardless of Plaintiff Crawford's fear of "unconstitutionally excessive fines imposed by 31 U.S.C. § 5321 if he willfully fails to file an FBAR, (*id.*, at 12–13), there was no allegation that he failed to file any FBAR that may have been required, much less the assessment of an "excessive" FBAR penalty, (doc. 30, at 15), nor was there any proposed amendment that spoke to this deficiency.

### b. Roger and Katerina Johnson

Plaintiff Roger Johnson states that he is a U.S. citizen who resides in the Czech Republic. (Doc 32-1, at 14.) Plaintiff Katerina Johnson is a citizen of, and resides, in the Czech Republic. (*Id.*, at 16.) They seek to invalidate the Czech IGA, FATCA, and the FBAR reporting requirements because: (1) Plaintiff Katerina Johnson, Plaintiff Roger Johnson's wife, who has been added as a party in the proposed Amended Verified Complaint, "strongly objected to having her financial affairs disclosed to the United States government", leading to the couple's decision to separate their assets, (*see id.*, at 15, 17); (2) they do not want the financial details of their accounts disclosed, (*see id.*, at 16); and (3) they fear "unconstitutionally excessive fines" if they willfully fail to file an FBAR. (*See id.*).

Previously, the Court found Plaintiff Roger Johnson lacking standing for three reasons. (Doc. 30, at 16.) First, the harm Plaintiff Roger Johnson alleges resulted from his wife's objections to FATCA and the choices they made in response were not traceable to the government. (*Id.*); *see Simon*, 426 U.S. at 41–42. Second, Plaintiff Roger Johnson's discomfort

18

with reporting requirements of American law did not support standing, as he did not allege any concrete constitutional injury. (Doc. 30, at 16 (citing *Lujan*, 504 U.S. at 561).) Third, the prospect of the hypothetical imposition of an excessive fine, if he willfully fails to file a required FBAR, was insufficient. (Doc. 30, at 16 (citing *Clapper*, 133 S. Ct. at 1477).)

To cure these deficiencies, Plaintiffs Roger Johnson states the value of his accounts subjects him to the reporting requirements of FACTA and FBAR, as well as adds a recurring recitation of the elements of standing, that they "now suffer[], and will continue to suffer, concrete and particularized injuries to legally protected interests, which injuries are caused by the challenged government actions and will be redressed by the requested relief." (Doc. 30, at 16.) However, the reporting requirement, itself, does not constitute "an invasion of a legally protected interest" and despite Plaintiffs discomfort with the alleged invasion of their privacy, they still have not identified a constitutionally protected interest for the same reasons identified in the Court's denial of Plaintiffs' Motion for Preliminary Injunction. (*Id.*, at 22–23.) Therefore, the new allegations regarding being subjected to reporting requirements do not cure the aforementioned deficiencies. There is no allegation that they failed to file any FBAR that may have been required, much less that the Government has assessed an "excessive" FBAR penalty against them.

### c. Stephen J. Kish

Plaintiff Kish states that he is a dual citizen of the United States and Canada, residing in Toronto, Canada. (Doc. 32-1, at 18.) The Court previously found that Kish's allegation that his wife "strongly opposes the disclosure of her personal financial information" under FATCA to be insufficient to convey standing because his wife is not a plaintiff. (Doc. 30, at 17 (citing *Coyne*, 183 F.3d at 494).) Plaintiff Kish's proposed amendments include being subjected to reporting

requirements and the same recurring recitation of the elements of standing, that he "now suffers, and will continue to suffer, concrete and particularized injuries to legally protected interests, which injuries are caused by the challenged government actions and will be redressed by the requested relief." (Doc. 32-1, at 19.) However, as analyzed above, these proposed amendments do not cure the deficiencies previously identified by the Court to have standing. As before, Plaintiff Kish may not assert claims on his wife's behalf. (Doc. 30, at 17.) The fact that he has suffered some "discord" in his marriage, (*id.*), is too vague and indirect of a harm to establish standing. Furthermore, as explained above, reluctance to comply with the requirements of American law and theoretical "excessive fines" that would be imposed if he willfully violated the law, do not convey standing. (Doc. 32-1, at 19.)

### d. Daniel and Lois Kuettel

Plaintiff Daniel Kuettel states that he is a citizen of Switzerland who renounced his U.S. Citizenship in 2012. (*Id.*, at 20.) The Court previously found that the only ongoing injury that Plaintiff Daniel Kuettel alleged was related to a college savings account maintained at a Swiss bank for his daughter, Plaintiff Lois Kuettel, who has been added to this action. (Doc. 32-1, at 22–23; Doc. 30, at 17.) The Court previously inferred a concession by Defendants as to standing for Plaintiff Daniel Kuettel on Counts 3 and 6; however, the Defendants deny such concession and these Counts will be analyzed in the same regard as all other Counts. (*See* doc. 30, at 18; doc. 34, at 4 n.1 (discussing doc. 16, at PageID# 216).) Plaintiff Lois Kuettel is a tri-citizen of the United States, Switzerland, and the Philippines. (Doc. 32-1, at 23.) There were several issues identified by the Court with regard to standing, for Plaintiff Daniel Kuettel, which will be analyzed in conjunction with Plaintiff Lois Kuettel.

20

First, the account balance was approximately $8,400, which fell below the $10,000 threshold for FBAR reporting. (Doc. 30, at 17.) This deficiency is cured by alleging that "[t]he account currently has a balance of greater than $10,000." (Doc. 32-1, at 22.) Second, Plaintiff Daniel Kuettel's daughter was only ten years old and not a plaintiff to the case. (Doc. 30, at 17.) This deficiency is also cured as Plaintiff Daniel Kuettel's daughter has been added as a plaintiff, as a minor child, by and through her next friend, Plaintiff Daniel Kuettel. (Doc. 32-1, at 1, 23.) Third, Plaintiff Daniel Kuettel's objection "to filing an FBAR as required by FinCEN because he is not a U.S. citizen and would not do so for his daughter's account" was insufficient because "[t]he relief for any wrong [was] either for Kuettel's daughter to sue her Swiss bank for disparate treatment . . . , or to seek recourse in the power of the market moving her accounts to an institution that wishes to compete for her business." (Doc. 30, at 18.)

Plaintiffs Daniel and Lois Kuettel allege that Plaintiff Lois Kuettel cannot avoid FBAR reporting by renouncing her U.S. citizenship and that Plaintiff Daniel Kuettel does not want to violate his daughter's privacy by filing the FBAR on her behalf. (Doc. 32-1, at 23–24.) For these reasons, Plaintiff Daniel Kuettel closed his daughter's account and opened another account in his name. (*Id.*, at 24.) However, as stated in the Court's denial for preliminary injunction, any advantages his daughter might receive by Plaintiff Daniel Kuettel filing an FBAR on his daughter's behalf or by placing the account in his name are based on a bank policy, not the conduct of the Defendants. (Doc. 30, at 18–19.) The failure to reap those advantages is due to the Bank's policies regarding someone like Plaintiff Daniel Kuettel's reluctance to comply with the FBAR requirements, not any action that is fairly traceable to the Government. (*See* doc. 30, at 18.)

Likewise, any assertion of past harm because Plaintiff Daniel Kuettel was "mostly unsuccessful" in refinancing his mortgage due to FATCA still does not convey standing. Any conceivable harm is attributable to the actions of a third-party foreign bank, not the actions of the Government. Finally, any past harm alleged is not redressable here because Plaintiff Daniel Kuettel renounced his American citizenship and has since obtained acceptable refinancing. (*See id.*, at 18 (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210–11 (1995) ("[T]he fact of past injury . . . does nothing to establish a real and immediate threat that he would again suffer similar injury in the future." (quotations omitted)).)

### e. Donna-Lane Nelson and Richard Adams

Plaintiff Nelson is a citizen of Switzerland who has renounced her U.S. citizenship. (Doc. 32-1, at 26–27.) She renounced her citizenship because a Swiss bank "offered investment opportunities that were not available to her as an American." (*Id.*, at 27.) She "resents having to provide" "explanations" to Swiss banks that have requested information on her past U.S. citizenship and payments to her daughter, who lives in the United States, and she sees "threats implied by these requests which appear to be prompted by FATCA." (*Id.*, at 28.) Furthermore, she does not want to disclose financial information to the Government, and fears she may be subjected to willful FBAR penalties, despite no such penalty having been imposed or threatened against her. Additionally, she fears the 30% withholding tax may be imposed against her "if her business partner", who is her husband, with whom she holds joint accounts, "opts to become a recalcitrant account holder." (*Id.*, at 28–29.)

Previously, the Court found Plaintiff Nelson lacked standing because her allegations of harm stemmed from third-party conduct. (Doc. 30, at 19.) Consistent with the above analyses, fear of hypothetical events that might have befallen her if she had not renounced her citizenship

was not sufficient to constitute concrete harm to confer Article III standing. (*Id.*, at 19–20.) The Court further found that discretionary decisions of a foreign bank do not create standing, and without standing, she could not air her "resentment" of U.S. law in this Court. (*Id.*, at 20.) In order to attempt to cure the above deficiencies, Plaintiff Nelson claims that she was "worried that her account would be closed and that she would be unable to open another account with her U.S. citizenship. (Doc. 32-1, at 27.) However, this allegation fails to cure the deficiencies for the same reasons. The discretionary decisions or future discretionary decisions of a foreign bank do not create standing. Furthermore, as identified above, fear of a hypothetical harm that may or may not occur if she had not renounced her citizenship is not sufficient to constitute concrete harm.

Plaintiff Nelson also proposes the following amendment: "[s]he also knew of many accounts of U.S. citizens that had been closed because of a person's ties to the U.S. and because of FATCA and IGAs." (*Id.*) This amendment fails to cure her standing deficiencies for all the same reasons previously stated. Moreover, knowledge of hypothetical harm to people not a party to this case by a third party cannot confer standing for Plaintiff Nelson.

Plaintiff Adams, Plaintiff Nelson's business partner and husband, is named as a party in the proposed amended complaint, and is a United States citizen currently residing in Switzerland. (*Id.*, at 29.) Plaintiff Adams alleges that he was unable to incorporate the business he shares with his wife in France because he is a U.S. citizen. (*Id.*) Like his wife, Plaintiff Adams is fearful that he will be unable to continue banking in Switzerland, and anticipates his account may be closed. (*Id.*, at 30.) If such event occurs, the couple will reluctantly consider separating their accounts. (*Id.*) With a closed account and separated marital accounts, Plaintiff Adams fears that he will be unable to open another account for everyday use. (*Id.*) Additionally, Plaintiff Adams does not wish to disclose the financial details of the accounts he currently holds. (*Id.*) Again, like his wife,

Plaintiff Adams fears "unconstitutionally excessive fines" due to FBAR reporting requirements. (*Id.*, at 31.)

Plaintiff Adams lacks standing for all the same reasons as his wife. Plaintiff Adams' hypothetical fear of the harms that may be caused by a third party bank are insufficient to confer standing because it does constitute concrete harm. Likewise, as discussed above, the discretionary decisions of a foreign bank do not create standing.

Consistent with the aforementioned proposed amendments, Plaintiffs Nelson and Adams formulaically recite the elements of standing, "[Nelson and Adams] now suffer[], and will continue to suffer, concrete and particularized injuries to legally protected interests, which injuries are caused by the challenged government actions and will be redressed by the requested relief." (*Id.*, at 29, 31.) As analyzed above, this is insufficient to convey standing.

### f.   L. Marc Zell

Plaintiff Zell is a dual citizen of the United States and the State of Israel, currently residing in Israel. (*Id.*, at 31.) In the Court's denial for a preliminary injunction, the Court found that the majority of Plaintiff Zell's allegations concerned the conduct of Israeli banks and his belief that these actions have been unfair to him or his clients, as a practicing attorney. (Doc. 30, at 21.) As stated above, the conduct of third parties—even if related to the banks' compliance with FATCA—does not confer standing to bring suit against Defendants, nor may Plaintiff Zell seek redress on behalf of third parties who have allegedly suffered harm, including unidentified clients not a party to this case.

Moreover, his compliance with a client's wish to avoid the FATCA reporting requirements potentially subjected the client—not Plaintiff Zell—to the risk of imposition of a 30% tax. (*See id.* (citing 26 U.S.C. § 1471(b)(1)(D).) Plaintiff Zell had not alleged that he has

24

been assessed a 30% withholding tax under FATCA, nor could he (or his clients) be, because such withholding under § 1471 is not presently being imposed against Israeli FFIs or their recalcitrant account holders. (Doc. 30, at 21–22.) Plaintiff Zell had not had a penalty imposed against him for any willful failure to file an FBAR either. (*Id.*, at 22.) Therefore, he had suffered no concrete and particularized injury sufficient to convey standing. (*Id.* (citing *Lujan*, 504 U.S. at 560).)

Plaintiff Zell's newly proposed allegations do not cure the above-mentioned deficiencies. The proposed amendments include statements that his accounts are subject to FATCA and FBAR required reporting, to which he is choosing not to comply. (Doc. 32-1, at 34.) But, again, Plaintiff Zell does not allege that he has been assessed a withholding tax under FATCA, as they are not presently imposed against Israeli recalcitrant account holders, nor has he alleged that he has been assessed a penalty for his willful failure to file an FBAR. Based on the Court's previous holdings, these allegations do not support that Plaintiff Zell has suffered a concrete and particularized injury sufficient to convey standing. Additionally, Plaintiff Zell recites the same statement that he meets the elements of standing, by formulaically reciting such elements, (doc. 32-1, at 35), which the Court finds as insufficient to confer standing.

### 4. Motion to Amend

Plaintiffs bring their Motion for Leave to Amend pursuant to Fed. R. Civ. P. 15(a)(2). "Rule 15(a)(2) provides that leave to amend is to be freely given when justice so requires." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010). "However, a motion for leave to amend may be denied where there is 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

25

amendment, *futility of amendment*, etc.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis in original). A proposed amendment is futile if the amendment could not withstand a motion to dismiss. *Riverview Health*, 601 F.3d at 520 (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)) (quotations omitted); *Thiokel Corp. v. Dep't of Treasury, Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993).

Here, analyzing each Plaintiff individually, the Court finds that none of the Plaintiffs has standing to sue Defendants. No individual Plaintiff has suffered an invasion of a legally protected interest, which is concrete and particularized, and actual or imminent, not conjectural or hypothetical. Moreover, no alleged injury is fairly traceable to the actions of the Defendants, but rather, the actions of an independent third party. Finally, there are no allegations that it is likely that the alleged injury will be redressed by a favorable decision. *See Lujan*, 504 U.S. at 560–61. In reaching these holdings, the Court analyzed the proposed Amended Verified Complaint, (doc. 32-1), which could not withstand Defendants' Motion to Dismiss, (doc. 26); therefore, the proposed amendments are futile.

Accordingly, all claims are **DISMISSED** for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), against all Defendants, without prejudice.

## III.    MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

In addition to challenging Plaintiffs' standing pursuant to Fed. R. Civ. P. 12(b)(1), Defendants' Motion to Dismiss, (*id.*), challenged Plaintiffs' proposed Amended Verified Complaint, (doc. 32-1), under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 26.) Because the Court has dismissed all claims under Rule 12(b)(1), the Court does not reach Defendants' Rule 12(b)(6) arguments.

## IV.    CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiffs' Motion for Leave to File an Amended Verified Complaint, (doc. 32), and the Court **GRANTS** Defendants' Motion to Dismiss, (doc. 26), Plaintiffs' Complaint. The captioned case is hereby **TERMINATED** upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.[7]

      **DONE** and **ORDERED** in Dayton, Ohio, this Monday, April 25, 2016.


                         s/Thomas M. Rose

                         _____
                              THOMAS M. ROSE
                    UNITED STATES DISTRICT JUDGE

---

[7] The Court acknowledges the assistance of student extern Anthony Graber of the University of Dayton School of Law in the preparation of this opinion.